2004 ND 223

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Charles JASTER, Defendant and Appellant.**

**No. 20030355.**

Supreme Court of North Dakota.

Dec. 14, 2004.

Michel W. Stefonowicz, State's Attorney, Crosby, N.D., for plaintiff and appellee.

Tom P. Slorby, Slorby Law Office, Minot, N.D., for defendant and appellant.

NEUMANN, Justice.

[¶ 1]   Charles Jaster appealed from a criminal judgment entered on a jury verdict finding him guilty of reckless endangerment.  We conclude that, although the district court abused its discretion in denying Jaster's motion to excuse two jurors for cause, the error is not reversible error. We further conclude the district court did not abuse its discretion in its challenged evidentiary rulings, and its instructions to

the jury adequately informed the jury of the applicable law. We affirm.

## I

[¶ 2]  Charles and Erika Jaster, although divorced, were living together in Crosby during November 2002. At approximately 1:30 a.m. on November 24, 2002, Erika went to the police department to report that she and Jaster had been involved in a physical altercation at their home. The chief of police, Lauren Throntveit, saw that Erika was bruised and bleeding, and he called another police officer and the county sheriff for back-up. Throntveit telephoned Jaster at his residence and told him they needed to discuss the incident. Jaster eventually agreed to talk to the officers if they would come to his residence.

[¶ 3]  When Throntveit and the other officers arrived at the residence, they went to the back door because the front door was weather-proofed shut. After Throntveit knocked on the door, Jaster answered and stood in the doorway. Throntveit explained the domestic violence laws to him and told Jaster he was under arrest. Jaster slammed the door shut and locked it. The officers broke open the door and discovered Jaster holding a handgun. Throntveit testified the handgun was pointed directly at him. After a struggle, the officers removed the handgun from Jaster and arrested him. The handgun was functional and loaded.

[¶ 4]  Jaster was charged with class C felony reckless endangerment. During his jury trial, Jaster testified that the officers interrupted his attempt to commit suicide and that he never pointed the handgun at them. The two officers who accompanied Throntveit testified they did not see Jaster point the handgun at himself during the encounter. The jury found Jaster guilty.

## II

[¶ 5]  On appeal, Jaster argues the district court erred in refusing to grant his motion to excuse two jurors for cause, erred in admitting hearsay testimony into evidence, and erred in instructing the jury on reckless endangerment.

### A

[¶ 6]  Jaster argues the district court erred in failing to grant his motion to excuse two jurors for cause.

[¶ 7]  During voir dire, two jurors stated that the prosecutor was presently performing legal work for them on estates that had not been closed. Jaster challenged the two jurors for cause. The State did not oppose the challenge for cause, but the district court denied the motion, reasoning "[t]here is an implied bias, but it is not one that is an automatic. I am not going to approve for cause, you can use your peremptories on those if you wish." Jaster used a peremptory challenge to exclude one of the jurors. The other juror served as an alternate juror, but was released from service before the jury began its deliberations.

[¶ 8]  We review a district court's decision on whether to excuse a juror for cause under an abuse of discretion standard. *State v. Schwab*, 2003 ND 119, ¶ 16, 665 N.W.2d 52. A district court must excuse a juror if the court "is of the opinion that grounds for challenge for cause are present." N.D.R.Crim.P. 24(b)(2). Section 28-14-06(3), N.D.C.C., provides that "[c]hallenges for cause may be taken on one or more of the following grounds . . . [s]tanding in the relation of . . . attorney and client . . . with either party." Section 29-17-36(2), N.D.C.C., similarly provides that "[a] challenge for implied bias of a juror may be taken for all or any of the following causes . . . [t]he relation-

ship of ... attorney and client." We have said "[a]n attorney-client relationship is one of the exclusive 'causes' of an implied bias that warrants dismissal of a juror." *State v. Thompson,* 552 N.W.2d 386, 388 (N.D.1996). In *State v. Smaage,* 547 N.W.2d 916, 919–20 (N.D.1996), this Court held that a district court did not abuse its discretion by denying an implied bias challenge to a juror where the record failed to show a prosecutor's direct and current client relationship with the juror. However, the record in this case shows the prosecutor had a direct and current client relationship with the two challenged jurors. Contrary to the district court's reasoning, this Court has ruled a challenge for cause must be granted if an implied bias has been established under N.D.C.C. § 29–17–36. *See State v. Rummel,* 326 N.W.2d 64, 67 (N.D.1982). We conclude the district court abused its discretion in failing to grant Jaster's challenge for cause of these two jurors because of their current attorney-client relationship with the prosecutor.

[¶ 9] Although the district court erred, the error does not require reversal under the circumstances. First, it appears that Jaster exercised only five of his six peremptory challenges. *See* N.D.R.Crim.P. 24(b)(1) (providing each side is entitled to six peremptory challenges when a twelve-person jury is to be impaneled). A defendant must exhaust all peremptory challenges before objecting to the denial of a challenge for cause. *See Thompson,* 552 N.W.2d at 388; *City of Bismarck v. Holden,* 522 N.W.2d 471, 473 (N.D.1994). Second, in *State v. Entzi,* 2000 ND 148, ¶ 10, 615 N.W.2d 145, the defendant argued "the court refused to excuse two jurors for cause, and he 'was forced to use two of his peremptory challenges to bump these biased jurors,' thereby prejudicing his right to exercise peremptory challenges." We explained:

In *United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 777, 145 L.Ed.2d 792 (2000), the Supreme Court recognized peremptory challenges are not of constitutional dimension, but "are one means to achieve the constitutionally required end of an impartial jury," and held "that if the defendant elects to cure" a trial court's erroneous refusal to excuse a potential juror for cause, "by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right." We hold a party's right to exercise peremptory challenges is not violated if the party uses a peremptory challenge to exclude a juror the trial court refused to excuse for cause, and no biased jurors sit.

*Id.*

[¶ 10] Because Jaster used a peremptory challenge to exclude one of the jurors and the other juror was released as an alternate juror before the jury began its deliberations, no biased jurors sat on his case and Jaster has not been deprived of any rights. We conclude the district court's error in failing to grant the challenge for cause is not reversible error.

B

[¶ 11] Jaster challenges the district court's allowance of certain prosecution testimony, mainly on hearsay grounds. The district court allowed Throntveit to testify that Jaster cursed at him and threatened him while being transported from Crosby to the Williams County Jail in Williston. The court also allowed Throntveit to testify that, before going to Jaster's residence, Erika told him "there had been a fight between Mr. Jaster and his wife." The court also allowed one of the other officers to testify that, before going to Jaster's residence, he put on a bulletproof

vest because "I was advised that he had guns in the house, and that he would shoot a police officer."

[¶ 12] A district court has broad discretion in evidentiary matters, and we will not overturn a district court's decision to admit or exclude evidence unless the court abused its discretion. *State v. Wiest,* 2001 ND 150, ¶ 9, 632 N.W.2d 812. The abuse of discretion standard therefore applies when reviewing a district court's evidentiary rulings under the hearsay rule. *State v. Stoppleworth,* 2003 ND 137, ¶ 6, 667 N.W.2d 586. While N.D.R.Ev. 403 gives a district court the power to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, we have said this power should be sparingly exercised. *State v. Klose,* 2003 ND 39, ¶ 28, 657 N.W.2d 276. Under N.D.R.Ev. 403, a district court is vested with wide discretion to control the introduction of evidence at trial, and our review is limited to determining whether that discretion was abused. *State v. Beciraj,* 2003 ND 173, ¶ 27, 671 N.W.2d 250. A district court abuses its discretion only when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. *Stoppleworth,* at ¶ 6.

[¶ 13] Generally, hearsay evidence is inadmissible. N.D.R.Ev. 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.D.R.Ev. 801(c). Under N.D.R.Ev. 803(3), a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)" is "not excluded by the hearsay rule, even though the declarant is available as a witness." Thus, a statement is not excluded as hearsay if it is offered to establish the declarant's state of mind.

*State v. Faul,* 300 N.W.2d 827, 832–33 (N.D.1980).

[¶ 14] Throntveit's testimony about Jaster cursing at him and threatening him while Jaster was being transported to jail obviously was not offered to prove his character in violation of N.D.R.Ev. 404(b), but was offered to show Jaster's state of mind. We have recognized that evidence of threatening statements are relevant to a defendant's state of mind. *See State v. Hart,* 1997 ND 188, ¶ 20, 569 N.W.2d 451. Jaster claimed he was attempting to commit suicide and did not point the handgun at law enforcement officers, and these statements to Throntveit were certainly relevant to dispute that claim as to his state of mind. Testimony about Jaster's cursing and threats was admissible under Rule 803(3), and the district court did not abuse its discretion in admitting this evidence.

[¶ 15] Throntveit's testimony that Erika told him there had been a domestic dispute and the other officer's testimony that he put on a bulletproof vest because he had been advised Jaster had guns in the house and would shoot a police officer also are not hearsay under the circumstances. A statement that is not offered to prove the truth of the matter asserted is not hearsay. *State v. Kelly,* 2001 ND 135, ¶ 22, 631 N.W.2d 167. The State was not attempting to establish that a fight had occurred or that Jaster had weapons at his residence and would shoot a police officer, but offered the evidence to establish and explain the law enforcement officers' presence at Jaster's residence and the reason they took precautionary measures during the investigation. *See State v. Schimetz,* 328 N.W.2d 808, 814 (N.D. 1982) (holding deputy sheriff's testimony that he had been told person was stabbed was not hearsay when statement was of-

fered to establish and explain the deputy sheriff's presence and investigation of the accident). We cannot say the district court erroneously found the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice, and we conclude the district court did not abuse its discretion in admitting this testimony.

### C

[¶ 16] Jaster argues the district court erred in instructing the jury on the elements of reckless endangerment.

[¶ 17] On appeal, jury instructions are fully reviewable. *State v. Wilson*, 2004 ND 51, ¶ 11, 676 N.W.2d 98. Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. Jahner*, 2003 ND 36, ¶ 13, 657 N.W.2d 266. We review jury instructions as a whole to determine whether they adequately and correctly inform the jury of the applicable law, even though part of the instruction standing alone may be insufficient or erroneous. *State v. Barth*, 2001 ND 201, ¶ 12, 637 N.W.2d 369. It is well settled that if the instructions to the jury, when considered in their entirety, correctly advise the jury about the applicable law, there is no error even though the district court refused to submit a requested instruction which itself was a correct statement of the law. *State v. Hammeren*, 2003 ND 6, ¶ 13, 655 N.W.2d 707. We will reverse only if the instructions, as a whole, are erroneous, relate to a central subject in the case, and affect a substantial right of the accused. *Wilson*, at ¶ 11.

[¶ 18] Reckless endangerment is proscribed by N.D.C.C. § 12.1–17–03, which provides:

A person is guilty of an offense if he creates a substantial risk of serious bodily injury or death to another. The offense is a class C felony if the circumstances manifest his extreme indifference to the value of human life. Otherwise it is a class A misdemeanor. There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized.

[¶ 19] The district court based the instruction on NDJI–Criminal K–8.20 (1990), and instructed the jury:

### RECKLESS ENDANGERMENT

(Under Circumstances Manifesting Extreme Indifference to Value of Human Life)

A person who creates a substantial risk of serious bodily injury or death to another human being under circumstances manifesting extreme indifference to the value of human life is guilty of Reckless Endangerment. There is risk if the potential for harm exists, whether or not a person's safety is actually jeopardized.

### ESSENTIAL ELEMENTS OF OFFENSE

The State's burden of proof is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements:

1. On or about November 24, 2002, in Divide County, North Dakota, the Defendant, Charles Jaster, created a substantial risk of serious bodily injury or death to a Crosby Police Officer;

2. The Defendant created the risk under circumstances manifesting his extreme indifference to the value of human life; and

3. That the Defendant engaged in the conduct recklessly.

[¶ 20] Jaster first argues the instruction is deficient with regard to the culpability requirement. Because N.D.C.C. § 12.1–17–03 does not specify any culpability, Jaster argues the culpability required is "willfully" under N.D.C.C. § 12.1–02–02(2). The district court rejected Jaster's request to have the word "willfully" inserted after the word "risk" in the jury instruction.

[¶ 21] In *State v. Hanson*, 256 N.W.2d 364, 367 (N.D.1977), this Court held that the culpability required for reckless endangerment under N.D.C.C. § 12.1–17–03 is "recklessly." The term "willfully" is defined in N.D.C.C. § 12.1–02–02(1)(e) as including the term "recklessly." Inclusion of the term "willfully" in the instruction is therefore unnecessary and would likely result in misleading or confusing the jurors. The district court did not err in refusing to include the term "willfully" in the jury instruction.

[¶ 22] Jaster also argues that the term "particular," which prefaces "person's safety" in N.D.C.C. § 12.1–17–03, should have been included in the pattern jury instruction's definition of reckless endangerment. Jaster requested that the word "particular" be included in the instruction, but the court refused.

[¶ 23] Section 12.1–17–03, N.D.C.C., states that "[t]here is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized." In *Hanson*, 256 N.W.2d at 368, this Court concluded that in situations where a group of persons, not individually identified, is endangered the "State need not prove that any one 'particular person' . . . was endangered," but the State must prove "that one or more persons in the group were endangered." Therefore, to convict a person of reckless endangerment the State must prove that at least one person was endangered or jeopardized by the defendant's conduct, but the State need not identify the person or persons endangered or jeopardized. It is unclear why the term "particular" was omitted from the pattern jury instruction that was used in this case. The omission of the term "particular" could lead a jury to believe it is irrelevant whether a person's safety is actually jeopardized or endangered. We conclude the omission of the word "particular" from the pattern jury instruction's definition of reckless endangerment renders that part of the instruction erroneous.

[¶ 24] Even though this part of the instruction, standing alone, is erroneous, we believe the instruction as a whole adequately and correctly informed the jury of the applicable law. *See Barth*, 2001 ND 201, ¶ 12, 637 N.W.2d 369. The "ESSENTIAL ELEMENTS OF OFFENSE" part of the instruction made reference to a "particular person" by requiring the jury to find beyond a reasonable doubt that Jaster "created a substantial risk of serious bodily injury or death to a Crosby Police Officer." Consequently, the jury nevertheless was required to find that at least one Crosby police officer was endangered or jeopardized. Under these circumstances, we conclude the instruction, although erroneous in part, adequately and correctly informed the jury of the applicable law.

### III

[¶ 25] The criminal judgment is affirmed.

[¶ 26] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.